UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

-----------------------------------------------------

IN RE:                                )        CHAPTER  7
                                      )
ALGIRDAS ZDANYS,                      )        CASE NO. 09-20593 (ASD)
                                      )
            DEBTOR.                   )        RE: ECF No. 32

-----------------------------------------------------

## MEMORANDUM OF DECISION AND
## ORDER OVERRULING CHAPTER 7 TRUSTEE'S
## OBJECTION TO DEBTOR'S AMENDED CLAIM OF EXEMPTIONS

### I. INTRODUCTION

The matter before the Court is the Chapter 7 Trustee's objection to the claim of

exemptions of Algirdas Zdanys (hereinafter, the "Debtor") based upon Bankruptcy Code

§522(d)(11)(D) and (E) in certain deferred Monthly Payments to which he became entitled

in a Settlement Agreement he entered into with Continental Casualty Company in 1992.

On June 12, 2012, the Court held a hearing (hereinafter, the "Hearing"), at which it heard

the testimony of the Debtor and the argument of counsel, and received documentary

evidence. For the reasons stated hereinafter, the Trustee's objection shall be overruled.

### II. BACKGROUND

The Debtor commenced the instant bankruptcy case by the filing of a petition

(hereinafter, the "Petition") under Chapter 7 of Title 11 of the United States Code on March

13, 2009 (hereinafter, the "Petition Date").  On March 17, 2009, Anthony Novak, Esq.

(hereinafter, the "Trustee"), was appointed as the Chapter 7 Trustee, and on June 23,

2009, the Debtor received his discharge. On March 23, 2010, the Court's Clerk's Office,

at the request of the Trustee, mailed to all of the Debtor's scheduled creditors a *Notice of*

*Need to File Proof of Claim Due to Recovery of Assets*. ECF No. 14.  According to the Claims Register, approximately $65,000 of creditor claims have been filed with the Court.[1]

On April 11, 2012, the Debtor filed an Amended Schedule B ("Personal Property") in which the Debtor amended that schedule to indicate his ownership of an "annuity"[2] issued by Continental Casualty Company (hereinafter, "Continental"), in accordance with a Settlement Agreement entered into by the Debtor and Continental on January 7, 1992 (hereinafter, the "Agreement"). Simultaneously, the Debtor filed an Amended Schedule C ("Property Claimed as Exempt"), in which he indicated his intention to exempt the "annuity" under the federal exemption scheme set forth in 11 U.S.C. §522(d)(11)(D) and (E).

The Debtor became entitled to receive the Monthly Payments as beneficiary of an insurance policy to which he became eligible as the result of disabling injuries suffered by him in 1987 when, as a Newington, Connecticut police officer responding to a call concerning a theft at a condominium complex, the car he was driving was hit head-on by the alleged thieves' car. The Agreement provided for an initial payment to the Debtor of $209,615.38, payable immediately upon execution of the Agreement. Thereafter, the Debtor became entitled to receive Monthly Payments for the rest of his life in the amount of $1,184.52, with the first two hundred and forty (240) payments guaranteed.

The Trustee has filed a timely *Trustee's Objection to Debtor's Amended Claim of Exemptions* (hereinafter, the "Objection")*,* ECF No. 32.  At the Hearing, the Trustee and

---

[1]Of the total claims,  approximately $33,000 were filed by the Trustee under Fed. R. Bankr. P. 3004.

[2]No copy of the "annuity" was submitted to the Court as an exhibit.  The Settlement Agreement which was submitted, Trustee's Ex. B, referred only to a "structured settlement" that included "Deferred Monthly Payments" (hereinafter, the "Monthly Payments").

the Debtor stipulated that since the filing of the Petition, the Debtor has continued to receive the Monthly Payments.  Although the parties did not stipulate as to the total monetary amount of the Monthly Payments that have been paid the Debtor since the Petition Date, based upon the number of months that have passed since that date it can be readily estimated that the Debtor has thus -far received about  $46,000. The Trustee has agreed that the Debtor may exempt up to $31,300 of the Monthly Payments that he has received since the Petition Date under §522(d)(11)(D) and §522(d)(5)[3] but maintains that he is ineligible under §§522(d)(11)(D) or 522(d)(11)(E) to exempt any additional amounts already received or any future Monthly Payments to which he would otherwise be entitled.  The Trustee therefore asks that all future Monthly Payments be paid over to the him until such time as the Trustee has received a monetary amount sufficient to pay in full all creditors with respect to which claims were filed and all administration fees and expenses of the estate.[4]

### III. DISCUSSION

Section 522(d)(11)(D) and (E) provide in relevant part:

(d)    The following property may be exempted under subsection (b)(2) of this section:

* * *

(11) The debtor's right to receive, or property that is traceable to–

* * *

---

[3]The "catchall" provision of §522(d)(5) allows a debtor to exempt his aggregate interest in any property up to the amount of $10,125.00. The Trustee has agreed to allow the Debtor to make use of this subsection although the Debtor has not requested in his Schedule C to employ said subsection.

[4]The Trustee has not asked the Court to order that the Monthly Payments be made directly to him by Continental and there is no evidence that the company has been made aware of the Objection.

(D) a payment, not to exceed $20,200[5] on account of personal bodily injury, not including pain and suffering or compensation for actual pecuniary loss of the debtor or an individual of whom the debtor is a dependent; or

(E) a payment in compensation of loss of future earnings of the debtor or an individual of whom the debtor is or was a dependent, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor.

As the objecting party, the Trustee has the burden of proving that the exemptions "are not properly claimed."  Fed. R. Bankr. P. 4003(c).

A.  *The Debtor's Claim of Exemption Pursuant to §522(d)(11)(D).*

It is the position of the Trustee that the Debtor is not entitled to exempt future Monthly Payments under Bankruptcy Code §522(d)(11)(D) because that subsection does not permit a Debtor to exempt any payments awarded in connection with pain and suffering, which under the Agreement was one element of the Monthly Payments. The Court does not need to consider this argument however, because the Trustee has already agreed to permit the Debtor to apply his entire exemption allowance of $20,200 toward the Monthly Payments he has received since the Petition Date as payments attributable to "personal bodily injury."

B.  *The Debtor's Claim of Exemption Pursuant to §522(d)(11)(E).*

In the Objection, as it concerns §522(d)(11)(E), the Trustee simply asserts that "there has been no evidence produced that the [Monthly Payment(s)] is a payment on compensation of loss of future earnings of the [D]ebtor, to the extent reasonably necessary for the support of the [D]ebtor . . . ." Objection, §2.

---

[5]The amount allowable for cases commenced before April 1, 2010.

4

1.    The Monthly Payments constitute payments in compensation of loss of future earnings of the Debtor.

At the Hearing, in support of his position, the Trustee directed the Court's attention to language in the Agreement which states, "[t]he proceeds of this structured settlement *all of which are intended as compensation for personal injury and pain and suffering, within the meaning of IRS Section 104(a)(2)[6] . . . "* (emphasis added), arguing in effect that the appropriate analysis in this matter begins and ends with the language of the Agreement. The Court agrees to the extent that if the language of the Agreement contract is clear and unambiguous, the intent of the parties is a question of law, and the contract is to be given effect according to its terms.

> The intent of the parties [to an agreement] is to be ascertained by a fair and reasonable, construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract . . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity. . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms. The mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous.
>
> If a contract is unambiguous within its *four corners*, intent of the parties is a question of law. . . . When the language of a contract is ambiguous, the determination of the parties' intent is a question of fact.

*HMZ Energy LLC, v. Sack Distributors, Corp. (In re KF Liquidating Co.),* 2011 Bankr. LEXIS 3537 *8-9 (Bankr. D. Conn. September 14, 2011) *quoting*, *Honulik v. Town of Greenwich*, 293 Conn. 698, 711, 980 A.2d 880 (2009) (emphasis added; citations and internal quotation

---

[6]In 1992, this section stated in relevant part, "gross income does not include – (2) the amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness."

marks omitted).

Although at first blush, the relevant language of the Agreement may appear to be unambiguous, the reference in the Agreement to the phrase, " *within the meaning of IRS Section 104(a)(2),*" adds a significant element of ambiguity.

By 1992, the date of the Agreement, the United States Tax Court (hereinafter, the "Tax Court") and many appellate courts had held that if a taxpayer receives a damage award for a physical personal injury, the entire award is excluded from income even if all or a part of the recovery is determined with reference to income lost because of the injury. *See Rickel v. Commissioner of Internal Revenue*, 900 F.2d 655, 658 (3d Cir. 1990) ("[I]t is judicially well-established that the meaning of 'personal injuries' in this context encompasses both nonphysical as well as physical injuries") and cases cited therein. Nevertheless, the Tax Court had long treated claims for nonphysical personal injuries quite differently, *Rickel* at 659, so it may be that the words chosen in the Settlement Agreement were selected to prevent the possibility that the Internal Revenue Service would consider any of the Monthly Payments to be made for any purpose other than for physical personal injuries. It is also possible however, that the words were chosen to incorporate the various types of damages that Section 104(a)(2) has been defined to include, such as lost wages that arose as a consequence of a physical personal injury. In 1992, the United States Supreme Court stated:

> [T]he victim of a physical injury may be permitted, under the relevant state law, to recover damages not only for lost wages, medical expenses, and diminished future earning capacity on account of the injury, but also for emotional distress and pain and suffering. . . . [T]he courts and the IRS long since have recognized that §104(a)(2)'s reference to "personal injuries" *encompasses*, in accord with common judicial parlance and conceptions,

6

nonphysical injuries to the individual" (internal citations omitted, emphasis added).

*United States v. Burke*, 504 U.S. 229, 235, 112 S. Ct. 1867 (1992).

The Court concludes that an appreciable ambiguity emanates from the intentional inclusion of the phrase "within the meaning of IRS Section 104(a)(2)" in the relevant language of the Agreement.

Since the relevant language of the Agreement is not clear and unambiguous, the determination of the meaning and intent of that language is a question of fact. The Debtor testified to his understanding that the Monthly Payments provided for in the Agreement, which was drafted by his attorney, were intended in part "to help compensate me because I was unemployable." Tr. 6-12-2012 at 11:05 A.M.[7] The Trustee did not refute this testimony and in fact, commented, "I understand that's part of the element."  Tr. 6-12-2012 at 11:05 A.M. The Court credits the Debtor's testimony.  Further, in light of the Debtor's age at the time of the accident (he was approximately 34 years old) and his spotty employment history since, (he testified that he has not worked full-time at any occupation since the accident), logic would suggest that while the lump-sum payment may have been intended to directly compensate him for his actual physical injury and pain and suffering, the Monthly Payments, extending as they do over his lifetime, were likely to have been intended to compensate him at least in part for his loss of future earnings.

A claimed exemption is "presumptively valid." 9 Collier on Bankruptcy, P 4003.04 (15th ed. rev. 1998); *In re Patterson*, 128 B.R. 737, 740 (Bankr. W.D. Tex. 1991). . . . Once an exemption has been claimed, it is the objecting party's burden (the trustee in this case) to prove that the exemption is not

---

[7]All references to "Tr." refer to the Court's own transcription based upon the audio recording of the Hearing, and are not intended to be an official certified transcript of the hearing.

properly claimed. See Fed. R. Bankr. P. 4003(c). Initially, this means that the objecting party has the burden of production and burden of persuasion. The objecting party must produce evidence to rebut the presumptively valid exemption. *In re Lester*, 141 B.R. 157, 161 (S.D. Ohio 1991).

*In re Riemann*, 2009 Bankr. LEXIS 3266, *5 (Bankr. D. Conn. October 7, 2009), *quoting*,

*Carter v. Anderson (In re Carter)*, 182 F.3d 1027, 1029 n. 3 (9th Cir. 1999).

Through his credible testimony, *inter alia*, the Debtor has established that the Monthly Payments were intended to be "payments in compensation of loss of future earnings" as that phrase is used in §522(d)(11)(E). The Trustee has not met his burden of proving otherwise.[8]

> 2.    The full monetary amount of each Monthly Payments constitutes a payment reasonably necessary for the support of the Debtor.

Having determined that the Monthly Payments the Debtor is receiving are payments in compensation of loss of future earnings, the Court now turns to address the second component of §522(d)(11)(E), a determination of whether the monetary amount the Debtor seeks to exempt is "reasonably necessary" for his support.

Among the factors the Court has considered relevant to this particular Debtor are:

(1) the Debtor's present and anticipated living expenses;

(2) the Debtor's present and anticipated income from all sources;

(3) the Debtor's ability to earn a living;

(4) the Debtor's job skills, training and education;

(5) the Debtor's other assets, including exempt assets;

---

[8]And while it may be fairly argued that only a portion of the Monthly Payments may have been intended to be payable to the Debtor for his loss of future earnings, the Trustee whose burden it is to refute the claimed exemption, made no effort to pro-rate the Monthly Payments and would be hard-pressed to do so on the basis of the evidence presented.

(6) the liquidity of these other assets;

(7) the Debtor's ability to save for retirement;

(8) the Debtor's "special needs"; and

(8) the Debtor's continuing financial obligations.

*See*, *e.g.*, *In re Richard E. Jackson and Angela J. Shelton*, 376 B.R. 75, 80 (Bankr. D. Conn. 2007).

In this case, the Debtor is now 59 years old and has not been employed on a full-time basis for many years. His unrebutted and credible testimony can be summarized as follows. He continues to suffer from the consequences of a traumatic brain injury and damage to his spine and his health is deteriorating. He is in constant pain.  He has nominal  assets other than his 2004 Toyota 4Runner which he values at $9,720, and his monthly pension from the Town of Newington in the amount of $1,718.12.   His doctors have determined him to be fully disabled from his former occupation as a policeman and he has a very limited ability to obtain and retain any other form of employment. He has numerous medical and drug expenses that vary from month to month, not all of which are covered by insurance and he anticipates a large dental bill for which insurance is largely unavailable.  He believes that he will not be eligible for Social Security when he turns 62 because he has not earned sufficient "work credits."

The Debtor's Affidavit, Debtor's Exh. 1, indicates his routine itemized monthly expenses to be $2,685, and those monthly expenses appear to be reasonably necessary, only allowing  him a cushion of approximately $218.[9]  However, if he is not allowed to retain

---

[9]$1718.12 (Pension) + 1184.52 (Monthly Payment) = $2902.64 - 2685.00 (Expenses) = $217.64.

the full Monthly Payment, and must rely on the Town of Newington pension alone, he would not have sufficient income to fully meet his monthly rent obligation of $1,200 and pay his monthly food budget of $560, let alone pay his other routine expenses such as electricity and heating, telephone, clothing and transportation. In light of the above, the Court finds that the Debtor's continuing receipt of the full monetary amount of the Monthly Payments are "reasonably necessary" for his support.  The Trustee has not met his burden of proving otherwise.

## IV.    CONCLUSION AND ORDER

For the reasons discussed herein, the Court concludes that the Debtor is entitled to an exemption pursuant to §522(d)(11)(E) in the full monetary amount of each of the Monthly Payments, in accordance with which:

**IT IS HEREBY ORDERED** the *Trustee's Objection to Debtor's Amended Claim of Exemptions,* ECF No. 32, is **OVERRULED**.

Dated: June 28, 2012                                        BY THE COURT

Albert S. Dabrowski
United States Bankruptcy Judge